UNITED STATES, Appellee,

v.

Christopher W. CAMPBELL,
Private First Class, U.S.
Army, Appellant.

No. 97–0149.
Crim.App. No. 9400527.

U.S. Court of Appeals for
the Armed Forces.

Submitted Aug. 16, 1999.

Decided March 22, 2000.

PER CURIAM.  SULLIVAN, J., filed a dissenting opinion.

For Appellant: *Colonel Adele H. Odegard, Captain Donald P. Chisholm,* and *Captain Kirsten V. Campbell–Brunson.*

For Appellee: *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Major Patricia A. Ham.*

## ON RECONSIDERATION

**PER CURIAM:**

### I

The Government has filed a petition for reconsideration, requesting clarification of our opinion at 50 MJ 154 (1999).  Appellant contends that the petition should be rejected because the requested clarification would constitute an advisory opinion.  Answer at 3. We disagree.

■   The present appeal involves an actual case and controversy between two opposing parties with concrete, adverse interests as to the validity of a conviction under the Uniform Code of Military Justice.  Although we are not required to articulate reasons for our decision, the issuance of reasoned opinions constitutes standard appellate practice, and clarification of the reasoning is an appropriate object of a petition for reconsideration. *See United States v. Berg,* 31 MJ 38 (CMA 1990).  The parties in a subsequent case are free to argue that specific aspects of an opinion, including an opinion on reconsideration, should be treated as non-binding *dicta,* but such a possibility does not transform a decision into an inappropriate advisory opinion.

### II

Appellant also contends that the Government's petition should be rejected because of an alleged conflict of interest involving one of appellant's initial counsel on appeal.  The counsel was transferred from the Defense Appellate Division to another Army agency while our initial decision was pending.  Subsequently, while the Government was considering whether to file a petition for reconsideration, the counsel assisted the Government in obtaining an affidavit.  The Government then moved to file the affidavit (Govt App Ex B), but we denied the Government's motion. 52 MJ 421 (1999).  There is no evidence that the counsel otherwise assisted the Government in this appeal.

Under the circumstances, it is unnecessary to decide whether the particular actions taken by counsel created a conflict of interest requiring remedial action.  Because we denied the Government's motion to file the affidavit, our action rendered moot, or at least harmless, the impact of the allegedly conflicted counsel on the present petition for reconsideration.

### III

■ Appellant also disagrees with the Government's interpretation of this Court's opinion. As a general matter, if a party's interpretation of this Court's opinion is strained or unreasonable, we will not grant a petition for reconsideration. In certain cases, however, we have determined that it is desirable to issue a clarification upon reconsideration even if we do not agree with a party's characterization of our opinion. *See United States v. Berg, supra.* In the present case, which addresses the frequently litigated subject of drug testing, clarification upon reconsideration may provide a useful means of reducing potential for unnecessary litigation in the future. Accordingly, we have determined that it is appropriate to issue a brief opinion upon reconsideration to supplement the decision reported at 50 MJ 154.

### IV

■ As we noted in our original opinion, Article 112a of the Uniform Code of Military Justice, 10 USC § 912a, includes a prohibition against wrongful use of illegal drugs. The prosecution in such a case must introduce sufficient evidence to convince a reasonable factfinder, beyond a reasonable doubt:

(a) That the accused used a controlled substance; and

(b) That the use by the accused was wrongful.

Para. 37b(2), Part IV, Manual for Courts-Martial, United States (1995 ed.). *See* 50 MJ at 158–59. Under the Manual, "[k]nowledge of the presence of the controlled substance is a required component of use." Para. 37c(10), Part IV. When the only evidence of drug use consists of a report of a test identifying the presence of the drug or a metabolite in the accused's body fluids, knowledge of the presence of the controlled substance may be inferred if the prosecution presents "expert testimony explaining the underlying scientific methodology and the significance of the test result, so as to provid[e] a rational basis for inferring that the substance was knowingly used and that the use was wrongful." 50 MJ at 159 (internal quotation marks omitted). *See United States v. Graham,* 50 MJ 56, 58–

59 (1999), *United States v. Harper,* 22 MJ 157 (1986), *United States v. Murphy,* 23 MJ 310 (1987), and *United States v. Ford,* 23 MJ 331 (1987).

■ We have held that the prosecution may demonstrate the relationship between the test result and the permissive inference of knowing, wrongful use through expert testimony showing: "(1) that the 'metabolite' is 'not naturally produced by the body' or any substance other than the drug in question"; (2) "that the cutoff level and reported concentration are high enough to reasonably discount the possibility of unknowing ingestion and to indicate a reasonable likelihood that the user at some time would have 'experienced the physical and psychological effects of the drug'"; and (3) "that the testing methodology reliably detected the presence and reliably quantified the concentration of the drug or metabolite in the sample." 50 MJ at 160.

In the present case, the deficiency was the absence of evidence establishing the frequency of error and margin of error in the testing process. Lacking such evidence, we held that the prosecution did not reliably establish that appellant's urine sample tested at or above the Department of Defense cut-off level and did not reasonably exclude the possibility of unknowing ingestion. Since the prosecution did not present any other direct or circumstantial evidence of knowing use, we held the evidence was legally insufficient to prove this element of the offense.

### V

■ The petition for reconsideration raises the issue of whether the three-part standard is mandatory in all drug testing cases. Given the rapid pace of technological change, we note that the three-part standard does not necessarily constitute the only means of proving knowing use. If the test results, standing alone, do not provide a rational basis for inferring knowing use, then the prosecution must produce other direct or circumstantial evidence of knowing use in order to meet its burden of proof. If the Government relies upon test results, it is not precluded from using evidence other than the

three-part standard if such evidence can explain, with equivalent persuasiveness, the underlying scientific methodology and the significance of the test results, so as to provide a rational basis for inferring knowing, wrongful use. Such evidence must be supported by more than an expert's qualifications and generalized theories. It must meet applicable evidentiary standards for scientific and specialized knowledge in terms of reliability and relevance to the specific proposition at issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2794–2795, 125 L.Ed.2d 469 (1993) (scientific testimony must be both reliable and relevant); *General Electric Co. v. Joiner*, 522 U.S. 136, 144–45, 118 S.Ct. 512, 518, 139 L.Ed.2d 508 (1997) (an expert's opinions must be "sufficiently supported" by the "studies on which they purport to rely"); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153–155, 119 S.Ct. 1167, 1177, 143 L.Ed.2d 238 (1999) (focusing not simply on the reasonableness in general of an expert's approach but also on the particular matter to which the expert's testimony was directly relevant). Factors that may be used to establish the reliability and relevance of the scientific evidence include the expert's credentials, the data used to formulate the opinion, whether that data was used by other experts in the field, whether the methodology can be used by another expert, and whether there has been reenactment or other simulations. *Cf. Kumho Tire Co., supra* at 1176–79.

## VI

■ The petition for reconsideration also raises the issue of whether, in using the three-part standard, the prosecution must introduce scientific evidence tailored to the specific characteristics of the person whose test results are at issue. We have not established such a requirement in the past, and we do not do so here. These cases involve the type of permissive inference that has been applied for many years to members of the armed forces. It is sufficient if the expert testimony reasonably supports the inference with respect to human beings as a class. If the defense seeks to demonstrate that the

inference should not be applied to a person with the characteristics of the accused, that is a matter for consideration by the factfinder on the question of guilt or innocence and does not affect the legal sufficiency of the inference.

## VII

We adhere to the views, as stated in our original opinion, "that the serious threat to military readiness posed by drug abuse permits use of evidence-gathering techniques" and permissive inferences "that would not necessarily pass muster" in the context of a civilian criminal trial. 50 MJ at 159. At the same time, we have recognized that the basic elements of fairness embodied in the Uniform Code of Military Justice require that any such inference must be based on scientific evidence that would permit a rational factfinder to conclude beyond a reasonable doubt that the results prove wrongful use. The approach set forth in our original decision, as supplemented by the present opinion on reconsideration, is designed to provide the appropriate balance between the Government's need for a flexible, dynamic drug testing program and the interest of members of the armed forces in a program that is administered in a fair and just manner.

## VIII

The petition for reconsideration is granted. On reconsideration, we supplement the previous opinion as set forth in this opinion.

SULLIVAN, Judge (dissenting):

I would grant the petition for reconsideration with full oral argument. I dissented from the Court's prior opinion in this case, which created the requirement for scientific proof "that the user at some time would have 'experienced the physical and psychological effects of the drug.'" *United States v. Campbell*, 50 MJ 154, 160 (1999). The majority does not meaningfully depart from this position today, so I again dissent.

In my previous dissenting opinion, I expressly stated that I disagreed with the majority's creation of a new requirement in urinalysis cases for "evidence that the con-

trolled substance is present in the accused's body in such a quantity that an expert can opine that the effects of the drug would have been felt." *Campbell*, 50 MJ at 163 (Sullivan, J., dissenting). In my view, this requirement is contrary to what is stated in *United States v. Harper*, 22 MJ 157, 163–64 (CMA 1986); paragraph 37(c), Part IV, Manual for Courts–Martial, United States, 1984; and a host of our cases after *Harper*. *See* 50 MJ at 162.