GIERKE, Judge
(dissenting):
En route to affirming the decision below in this case, the majority has offended the Due Process Clause of the Constitution, transformed Article 112a into an absolute-liability offense, and modified the test for admissibility of scientific evidence. I believe that the mere presence of a drug metabolite in the body, standing alone, is insufficient to overcome the presumption of innocence. United States v. Bond, 46 MJ 86, 92 (1997) (Gierke, J., dissenting); see United States v. Harper, 22 MJ 157, 163-64 (CMA 1986).
“An inference is ‘irrational’ or ‘arbitrary’ and thus violates due process ‘unless it can at least be said with substantial assurance’ that the inferred fact is ‘more likely than not to flow from the proved fact on which it is made to depend.’ ” Bond, supra, quoting Barnes v. United States, 412 U.S. 837, 842, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Furthermore, “[i]f the permissive inference is the only proof of guilt, then it must meet a higher standard than ‘more likely than not’; it must flow from the proved fact beyond a reasonable doubt.” Id., citing Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and E. Imwinkelried, P. Giannelli, F. Gilligan, and F. Lederer, Courtroom Criminal Evidence § 2920 at 975 (2d *86 ed.1993); see State v. Flinchpaugh, 232 Kan. 831, 659 P.2d 208, 212 (1983) (discovery of drug in person’s blood insufficient to prove knowing possession).
The majority opinion permits the trier of fact to infer drug use from the presence of the metabolite in the body, and then to use the same evidence to infer knowing use, without any other evidence from which knowing use may be inferred. Proof of the first element of the offense, i.e., use, automatically proves the second element, ie., wrongfulness.
The majority asserts that it is not creating an absolute liability offense. 55 MJ at 81 n.4. It recognizes that Congress did not intend Article 112a to create an absolute-liability offense. However, when a court-martial may convict an accused based solely on the presence of a metabolite in the body; we have created an absolute-liability offense, no matter how we rationalize it or what we call it.
In Harper, supra, this Court held that a reliable urinalysis supplemented by expert testimony that the metabolite was not naturally produced by the body was sufficient to permit an inference of use. This Court declined, however, to hold that the results of a urinalysis test, standing alone, were sufficient to prove wrongful use.
In United States v. Ford, 23 MJ 331, 336-37 (CMA 1987), this Court specifically addressed, for the first time, the “constitutional sufficiency” of the permissive inference of wrongfulness. This Court concluded that it “comports with due process,” because of the limited access to drugs in the armed forces, which greatly reduces the probability of innocent ingestion; the fact that servicemembers are on notice to avoid any and all contact with drugs, “which further reduces the possibility of innocent ingestion;” the fact that “the physiological effects from the internal presence of the drug in the body might serve to alert the user to the presence of a controlled substance in his system;” and the fact that a person “generally knows what he consumes.” Based on these premises for the permissive inference, this Court concluded that there was “no constitutional violation” in a conviction based on the inference of wrongfulness, even if the accused presents evidence to the contrary. Ford cites Harper with approval in several places (23 MJ at 332, 333, 336, and 337), strongly indicating that this Court intended Ford to be consistent with Harper, and not to overrule it or erode it in any way.
In Bond, supra, this Court deviated from the Harper-Ford approach and upheld a conviction based solely on the permissive inference of knowledge, even though the factual predicate for the inference that had been set out in Ford was missing. Accordingly, I dissented.
In Campbell I, 50 MJ 154 (1999), and Campbell II, 52 MJ 386 (2000), this Court returned to the Harper-Ford analysis. The majority now attempts to recast Campbell I and Campbell II as decisions based on admissibility of novel scientific evidence, instead of decisions based on sufficiency of the evidence. Unfortunately, the language of the decisions belies the majority’s attempt. While the granted issue in Campbell I was the admissibility of evidence obtained through a novel testing procedure, this Court declined to address the granted issue. Instead, it decided the case on the basis of two issues specified by the Court, both involving sufficiency of the evidence. 50 MJ at 161-62. Similarly, Campbell II was not decided on the basis of admissibility of the evidence, but on the legal insufficiency of the evidence. In Campbell II, we said:
In the present case, the deficiency was the absence of evidence establishing the frequency of error and margin of error in the testing process. Lacking such evidence, we held that the prosecution did not reliably establish that appellant’s urine sample tested at or above the Department of Defense cut-off level and did not reasonably exclude the possibility of unknowing ingestion. Since the prosecution did not present any other direct or circumstantial evidence of knowing use, we held the evidence was legally insufficient to prove this element of the offense.
52 MJ at 388 (emphasis added).
Furthermore, even if we decided this ease solely on the basis of the admissibility of the *87 urinalysis test results, I would be unable to join the majority. The majority expands the holding in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to require the military judge to assess, as a condition precedent to admissibility, whether the urinalysis test results support the inference of “knowing use.” 55 MJ at 81 n.4. By requiring the military judge to determine, as a condition precedent to admissibility, that the expert testimony tend to prove “knowing use,” the majority requires that the expert testimony tend to prove both elements of the offense: (1) use; and (2) wrongfulness, of which knowledge is a component. - See paras. 37b(2)(a) and (b) and para. 37b(5), Part IV, Manual, supra.
In my view, Daubert established standards for determining the reliability of scientific evidence. It did not establish standards for overcoming the presumption of innocence, nor did it establish a requirement that scientific evidence tend to prove all elements of an offense as a condition of admissibility. To be admissible, a reliable drug test need only “assist the trier of fact to understand the evidence or to determine a fact in issue.” Mil.R.Evid. 702, Manual for Courts-Martial, United States (2000 ed.); Daubert, supra at 591, 113 S.Ct. 2786. It need not, as the majority requires, tend to prove both elements of the offense. The majority’s decision goes far beyond what Daubert requires.
This Court decided long ago in Harper that a reliable urinalysis test is relevant to prove use, because use may be inferred from the presence of a drug metabolite in the body. The majority now requires that, in order to be relevant, the urinalysis test must not only support an inference of use, it must also support an inference of knowing use.
In my view, a reliable urinalysis test is relevant under Daubert to prove use of drugs. However, it does not prove knowing use unless it is supplemented by expert testimony or other evidence showing knowing use, or at least permitting knowledge to be rationally inferred. See United States v. Murphy, 23 MJ 310, 312 (CMA 1987). In Campbell II, this Court held, “If the test results, standing alone, do not provide a rational basis for inferring knowing use, then the prosecution must produce other direct or circumstantial evidence of knowing use in order to meet its burden of proof.” 52 MJ at 388.
In the case before us, I consider it significant that the Government has failed to present any evidence to support its argument that this is atf impossible evidentiary burden. It may be met by circumstantial evidence of knowing use that is extrinsic to the urinalysis test, as in United States v. Barnes, 53 MJ 624 (N.M.Ct.Crim.App.2000), set aside, 55 MJ 236 (Daily Journal 2001), or by expert testimony that the metabolite level was high enough to reasonably discount the possibility of unknowing ingestion and to indicate a reasonable likelihood that the user would have experienced the physical and psychological effects of the drug. As we emphasized in Campbell II, it is not necessary that the expert testify that a particular accused would have experienced the effects of the drug. “It is sufficient if the expert testimony reasonably supports the inference with respect to human beings as a class.” 52 MJ at 389.
I have consistently taken the position that the Due Process Clause does not permit courts-martial to convict an accused of a felony drug offense based solely on the presence of a drug metabolite in his or her body. The majority’s decision in this case is inconsistent with that position. Accordingly, I dissent. See United States v. Bond, supra.