# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――――

**No. ACM 24064**

―――――――――――――

**UNITED STATES**
*Appellee*

**v.**

**Collyn L. LAWRENCE**
Airman First Class (E-3), U.S. Air Force, *Appellant*

―――――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 7 May 2026[1]

―――――――――――――

*Military Judge*: Joshua D. Rosen.

*Sentence*: Sentence adjudged on 21 May 2024 by SpCM convened at Shaw Air Force Base, South Carolina. Sentence entered by military judge on 14 June 2024: Reduction to E-2 and a reprimand.

*For Appellant*: Major Trevor N. Ward, USAF.

*For Appellee*: Colonel G. Matt Osborn, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Abhishek S. Kambli, USAF; Major Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before DOUGLAS, MCCALL, and KUBLER, *Appellate Military Judges*.

Judge MCCALL delivered the opinion of the court, in which Senior Judge DOUGLAS and Judge KUBLER joined.

―――――――――――――

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

―――――――――――――

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

_____

MCCALL, Judge:

A military judge sitting as a special court-martial pursuant to Article 16(c)(2)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 816(c)(2)(A), convicted Appellant, contrary to his pleas, of one specification of wrongful use of Delta-9 Tetrahydrocannabinol, a Schedule I controlled substance, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[2] The military judge sentenced Appellant to a reduction to the grade of E-2 and a reprimand. The convening authority took no action on the findings or sentence.

Appellant raises two issues on appeal, which we have rephrased: (1) whether Appellant's conviction is legally and factually insufficient because the Government failed to prove a knowing use, and (2) whether special courts-martial under Article 16(c)(2)(A), UCMJ, are unconstitutional. While not raised by Appellant, we have also considered: (3) whether Appellant is entitled to relief for appellate delay.

We have carefully considered issue (2) and find it does not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)); *see also United States v. Wheeler*, 85 M.J. 70, 79 (C.A.A.F. 2024) (holding the unrefusable military judge-alone special court-martial where neither a punitive discharge nor confinement of more than six months may be adjudged does not run afoul of the Fifth Amendment Due Process Clause[3]).

As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.[4]

## I. BACKGROUND

Appellant enlisted in the Air Force on 6 September 2022, and at the time of his court-martial had served for 1 year and 9 months. On 9 January 2024, Appellant was randomly selected for a urinalysis test. In accordance with Air

---

[2] Unless otherwise noted, all references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] U.S. CONST. amend. V. In addition, our superior court in *Wheeler* noted the United States Supreme Court has repeatedly stated that the Sixth Amendment right to a jury does not apply to courts-martial. U.S. CONST. amend. VI; *Wheeler,* 85 M.J. at 74 n.2.

[4] The court was properly assembled; however, the trial judge neglected to announce the proper assembly prior to the beginning of the trial on the merits as required by R.C.M. 911. Appellant does not allege prejudicial error, and we find none.

Force Drug Demand Reduction Program (DDRP) procedures, Appellant provided his urine sample under the observation and direction of a trained drug testing observer. The sample was then packaged and shipped to the Air Force Drug Testing Lab (AFDTL) at Joint Base San Antonio–Lackland (JBSA–Lackland), Texas, for analysis. The report from that analysis indicated Appellant's urine sample was positive for Delta-9 Tetrahydrocannabinol (THC-9) at a level of 22 nanograms per milliliter (ng/mL), 7 ng/mL above the Department of Defense (DoD) cutoff level of 15 ng/mL.

Appellant was offered nonjudicial punishment (NJP) under Article 15, UCMJ, 10 U.S.C. § 815, for the offense of wrongful use of THC-9. Appellant elected not to accept the NJP and demanded a trial by court-martial. A single charge and specification of wrongful use of THC-9, a Schedule I controlled substance, in violation of Article 112a, UCMJ, was properly referred against Appellant on 18 March 2024 for a 21 May 2024 court-martial.

During Appellant's court-martial, the Government introduced evidence Appellant smoked through the use of a vape pen and was on leave from 27 December 2023 to 29 December 2023. The Government entered all paperwork associated with the collection of Appellant's urine sample into evidence along with Appellant's AFDTL urinalysis report. Appellant consented to stipulations offered by the trusted agent who notified Appellant of his selection for a random urinalysis test, the observer who observed Appellant during the urinalysis, the Drug Demand Reduction (DDR) employee who received the sample from Appellant and the observer on 9 January 2024, and the DDR Program Manager who was responsible for packing and shipping the sample. The stipulations indicate proper procedures were followed on that day. The stipulations also indicate the local urinalysis program office is inspected periodically and passed its last inspection.

The Government called Dr. EH, who works at AFDTL and was qualified as an expert in the field of forensic toxicology and the AFDTL procedures. Dr. EH testified THC-9 is a recreational drug produced by the Cannabis Sativa plant and is a controlled substance. Dr. EH indicated THC-9 is not normally found in the body, and when ingested, the drug breaks down into the metabolite 11 Nor-9-Carboxy Delta-9 Tetrahydrocannabinol (THCA). Dr. EH explained AFDTL tests for this metabolite and clarified THCA is also not produced naturally by the body and will only be produced if THC-9 is ingested. Finally, Dr. EH testified the DoD cutoff for reporting a specimen as positive for THC-9 is 15 ng/mL and the cutoff was set at this level "based on research in the nineties, about what instrumentation could do." He further added, "So we got the cutoff [to] be high enough, so it's not, it's not noise. We know it's actually a signal there. And then the cutoff is also set high enough for, at that time, the non-using population is completely separated from a population of known users."

Dr. EH then testified AFDTL has regular inspections, audits, and security protections to ensure their data is scientifically valid and legally defensible. Particularly for THC-9, the testing methodology is first an immunoassay test which is "an accepted procedure in forensic toxicology." If a specimen tests positive in the immunoassay test, it will then be analyzed by liquid chromatography, which is also an "accepted procedure in forensic science" with an "almost absolute" certainty in identifying organic molecules. Once a specimen tests positive in both the immunoassay test and the liquid chromatography mass spectrometry, it will then be reviewed by chemists and two other laboratory certifying officials before being reported as a positive result. Finally, Dr. EH reviewed the AFDTL lab report for Appellant's urine sample and testified all proper procedures were followed, and the urine sample contained the metabolite, THCA, in a concentration consistent with the recreational use of THC-9.

When questioned by Appellant's trial defense counsel, Dr. EH testified THC is sold recreationally in some states and can be consumed through vaping. Dr. EH also testified THC can be bought at vape shops which are not regulated by the federal government. Using the results from Appellant's sample, Dr. EH could not testify as to the amount of THC-9 ingested.

In his case in chief, Appellant offered documentary evidence in the form of nine written character statements.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his conviction claiming the Government failed to prove his knowing use of THC-9 and that the permissive inference is unconstitutional in marijuana cases.

#### 1. Law

We review issues of legal sufficiency de novo. *United States v. Harrington,* 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King,* 78 M.J. 218, 221 (C.A.A.F. 2019)). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a

conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). "The [G]overnment is free to meet its burden of proof with circumstantial evidence." *Id.* (citations omitted).

We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency in proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)). The current version of Article 66(d)(1), UCMJ, states:

> (B) FACTUAL SUFFICIENCY REVIEW.
>
> (i) In an appeal of a finding of guilty under subsection (b), the [c]ourt may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.
>
> (ii) After an accused has made such a showing, the [c]ourt may weigh the evidence and determine controverted questions of fact subject to—
>
> > (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and
> >
> > (II) appropriate deference to findings of fact entered into the record by the military judge.
>
> (iii) If, as a result of the review conducted under clause (ii), the [c]ourt is clearly convinced that the finding of guilty was against the weight of the evidence, the [c]ourt may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1) (2024 *MCM*).

"[T]he requirement of 'appropriate deference' when a [Court of Criminal Appeals (CCA)] 'weigh[s] the evidence and determine[s] controverted questions of fact' . . . depend[s] on the nature of the evidence at issue." *Harvey*, 85 M.J. at 130 (third and fourth alterations in original). It is within this court's discretion to determine what level of deference is appropriate. *Id.* at 131.

The CCA must be "clearly convinced that the finding of guilty was against the weight of the evidence" before it may "dismiss, set aside, or modify the finding, or affirm a lesser finding." Article 66(d)(1)(B)(iii), UCMJ, 10 U.S.C. § 866(d)(1)(B)(iii) (2024 *MCM*). "[T]he quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is proof beyond a reasonable doubt, the same as the quantum of proof necessary to find an accused guilty at trial." *Harvey*, 85 M.J. at 131 (internal quotation marks omitted).

For this court "to be 'clearly convinced that the finding[s] of guilty [were] against the weight of the evidence,' two requirements must be met." *Id*. at 132. First, we must decide the evidence, as we weighed it, "does not prove that the appellant is guilty beyond a reasonable doubt." *Id*. Second, we "must be clearly convinced of the correctness of this decision." *Id*.

To find Appellant guilty of a violation of Article 112a, UCMJ, as charged, the Government was required to prove, beyond a reasonable doubt, that Appellant used Delta-9 Tetrahydrocannabinol, a Schedule 1 controlled substance, and such use was wrongful. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*) pt. IV, ¶ 50.b.(2).

> "Use" means to inject, ingest, inhale, or otherwise introduce into the human body, any controlled substance. Knowledge of the presence of the controlled substance is a required component of use. Knowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence. This permissive inference may be legally sufficient to satisfy the Government's burden of proof as to knowledge.

*MCM*, pt. IV, ¶ 50.c.(10).

"'Controlled substance' means amphetamine, cocaine, heroin, lysergic acid diethylamide, marijuana . . . . 'Controlled substance' also means any substance that is included in Schedules I through V established by the Controlled Substances Act of 1970 (21 U.S.C. § 812)." *MCM*, pt. IV, ¶ 50.c.(1). The Controlled Substances Act, 21 U.S.C. § 812, sets forth that THC-9 is a Schedule I controlled substance.

Our superior court has held the Government may establish an inference of wrongfulness through expert testimony interpreting urinalysis tests that prove an appellant's use of a controlled substance. *United States v. Downum,* 86 M.J. 200, 204 (C.A.A.F. 2025) (first citing *United States v. Green,* 55 M.J. 76, 80 (C.A.A.F. 2001); and then citing *United States v. Campbell,* 52 M.J. 386, 388 (C.A.A.F. 2000) (per curiam) (on reconsideration)). When used to establish an inference of wrongfulness, the expert testimony must establish (1) that the metabolite is not naturally produced by the body or any substance other than the drug in question, (2) the cutoff level and reported concentration are high enough to reasonably discount the possibility of unknowing ingestion, and (3) the testing methodology reliably detected the presence and concentration of the drug or metabolite in the sample. *Id.* (citation omitted)*; see also United States v. Ford*, 23 M.J. 331, 337 (C.M.A. 1987) (citation omitted) (noting the permissive inference has existed in the military justice system since 1955 and has found "longstanding and consistent judicial approval" in the military and civilian courts).

**2. Analysis**

Appellant argues his conviction is not legally or factually sufficient. Specifically, Appellant argues the Government put on no evidence Appellant knowingly used THC-9 and instead the Government asked the trier of fact to use the permissive inference to "infer knowledge." Appellant argues the permissive inference is unconstitutional for marijuana cases as the prevalence of accidental or unknowing ingestion of marijuana is exceedingly frequent. Based on this frequency, Appellant argues present-day experience does not make it more likely than not that a positive drug test is the result of a knowing use. We disagree because a metabolite for THC-9, at a high-enough level to discount unknowing ingestion, was detected in Appellant's urine through a reliable drug test. *See MCM*, Part IV, ¶ 50.c.(10).

Addressing legal sufficiency, Appellant argues there was no evidence Appellant knowingly ingested THC-9 "or experienced the effects of THC-9." The law does not require evidence that Appellant experienced the effects of a drug in order to use the permissive inference.[5] The evidence introduced at trial shows Appellant's specimen was at 22 ng/mL, above the 15 ng/mL DoD cut-off. Using the *Campbell* factors as described in *Downum*, the Government introduced expert testimony establishing (1) the metabolite identified, THCA, is only produced by THC-9 use; (2) the cut-off level and concentration was high enough to discount the possibility of unknowing ingestion; and (3) the testing methodology was reliable and detected the presence and concentration of the THCA in the sample. Thus, the evidence met the legal threshold required to allow the permissive inference of wrongful and knowing use. Once allowed, the court could also consider the evidence of Appellant's vape use and Appellant's vacation plans in deciding whether to use the permissive inference. After viewing the evidence in the light most favorable to the Prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and the conviction is legally sufficient.

Appellant argues the permissive inference is facially unconstitutional due to the prevalence of marijuana in society and the likelihood of accidental or unknowing exposure to marijuana. Again, we disagree. The permissive inference has been in use for over 70 years and has been reviewed by the United States Court of Appeals for the Armed Forces (CAAF) as recently as 2025.[6]

---

[5] "In *Green*, [our superior court] clarified that an Article 112a[, UCMJ,] conviction would still be legally sufficient if the expert testimony did not address whether [an accused] would have experienced the physiological effects of the controlled substance, 55 M.J. at 81, but otherwise left the *Campbell* permissible inference factors intact." *Downum,* 86 M.J. at 205 n.3.

[6] *See, e.g.*, *Downum,* 86 M.J. at 204.

This court reviewed the use of a permissive inference in a marijuana case in 2017 and found the permissive inference alone is sufficient to prove the knowledge element. *United States v. Hudson*, No. ACM 38846, 2017 CCA LEXIS 13, at *9–10 (A.F. Ct. Crim. App. 9 Jan. 2017) (unpub. op.). The permissive inference is still good law and despite Appellant's argument to the contrary, we see no reason to find it unconstitutional, facially, or as applied.

Addressing factual sufficiency, Appellant first argues the conviction was based on improper opinion evidence offered by the Government's expert. Appellant then argues the conviction is not factually sufficient based on the evidence of Appellant's good military character. Assuming *arguendo* Appellant raised the necessary specific deficiency of proof for a factual sufficiency determination, after considering all of the evidence admitted at trial and giving the appropriate deference to the trier of fact, we find Appellant wrongfully used THC-9 in violation of Article 112a, UCMJ. The amount of THC-9, a Schedule I controlled substance, in Appellant's sample was 7 ng/mL above the DoD cutoff. Even though determined in the 1990s, the DoD cut-off is still set at an appropriate level to reasonably discount the possibility of unknowing ingestion. We find the expert's testimony credible in determining how the metabolite is produced, the methodology used in testing for THC-9, the level of metabolite found in Appellant's sample, and that this metabolite concentration was consistent with the recreational use of marijuana. We find this to be a textbook case where a permissive inference is allowed. Considering the permissive inference, Appellant's known vape use, and scheduled leave plans, the findings of guilty to both the Specification and the Charge by the factfinder are not against the weight of the evidence, and we are also convinced of Appellant's guilt beyond a reasonable doubt.

We find this conviction is both factually and legally sufficient.

## B. Appellate Delay

We review whether Appellant is entitled to relief because this court's decision on his appeal was not rendered within 18 months of docketing.

### 1. Additional Background

The military judge sentenced Appellant on 21 May 2024 and signed the entry of judgment on 14 June 2024. On 6 September 2024, Appellant filed his notice of appeal, pursuant to Article 66(b)(1)(A), UCMJ, and this court docketed his case on 6 September 2024.[7] Appellant later requested and received 14 enlargements of time before he ultimately submitted his assignments of error

---

[7] The Government provided the record of trial with a verbatim transcript on 30 September 2024.

brief on 30 January 2026. The Government submitted its answer on 2 March 2026. On 9 March 2026, Appellant filed a timely reply in response to the Government's answer.

### 2. Law

"Due process entitles convicted service members to a timely review and appeal of court-martial convictions." *United States v. Moreno,* 63 M.J. 129, 132 (C.A.A.F. 2006) (citation omitted). "This court reviews de novo whether an appellant's due process rights are violated because of post-trial delay." *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 135).

In determining whether appellate review is timely, the CAAF identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. *Moreno*, 63 M.J. at 142. Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record of trial was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.*

In determining whether the delay resulted in a due process violation, this court uses the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), as adopted by the CAAF in *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." 63 M.J. at 135 (citations omitted).

The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). "Of these, the most serious is the last [type], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Additionally, if an appellant has not shown prejudice from the delay, this court cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of any due process violation, this court may provide appropriate relief where there is "excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). If a CCA decides relief is warranted for excessive post-

trial delay under Article 66(d)(2), UCMJ, the relief must be "appropriate," meaning it must be suitable considering the facts and circumstances surrounding that case. *United States v. Valentin-Andino*, 85 M.J. 361, 363 (C.A.A.F. 2025). This does not require a CCA to provide "objectively meaningful" relief and it does not obligate a CCA to explain its reasoning regarding the relief it does provide. *Id.* at 367.

### 3. Analysis

In Appellant's case, more than 18 months have elapsed since Appellant's case was docketed with this court. Thus, there is a facially unreasonable delay. *See Moreno*, 63 M.J. at 135.

While this delay was facially unreasonable, it did not violate Appellant's due process rights. *See Barker*, 407 U.S. at 138–40. Appellant has not alleged any particular prejudice from the delay, nor do we perceive one. The delay in resolving his appeal is primarily attributable to his appellate defense counsel's 14 requests for enlargements of time and has not been so egregious as to adversely affect the perception of the military justice system. *See Toohey*, 63 M.J. at 362. Particularly, this court was informed that Appellant was aware of his case's status, and consented to his counsel's requests for each enlargement of time.

We have also considered whether relief for excessive post-trial delay is appropriate under Article 66(d)(2), UCMJ, even in the absence of a due process violation. *See Valentin-Andino*, 85 M.J. at 367. We conclude such relief is not warranted.

### III. CONCLUSION

The findings as entered are correct in law and fact. Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2024 *MCM*). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court