UNITED STATES, Appellee

v.

John D. BOND, Aviation Electrician's
Mate Third Class, U.S. Navy,
Appellant.

No. 96–0156.
Crim.App. No. 94–1042.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 5, 1996.

Decided May 15, 1997.

For Appellant: *Lieutenant Commander
Eric C. Price,* JAGC, USN (argued).

For Appellee: *Lieutenant K.L. Flynn,*
JAGC, USNR (argued); *Colonel Charles
Wm. Dorman,* USMC, and *Commander D.H.
Myers,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

In December of 1993, appellant was tried
by a special court-martial composed of officer
members at Naval Base, Philadelphia, Penn-
sylvania. Contrary to his pleas, he was
found guilty of wrongfully using cocaine, in
violation of Article 112a, Uniform Code of
Military Justice, 10 USC § 912a. He was
sentenced to a bad-conduct discharge, hard

labor without confinement for 60 days, restriction for 60 days, and reduction to pay grade E–1. On May 31, 1994, the convening authority approved this sentence, and on September 5, 1995, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUSTAIN A FINDING THAT APPELLANT WRONGFULLY USED COCAINE BEYOND A REASONABLE DOUBT.

We hold that the evidence of record is legally sufficient to support the members' finding beyond a reasonable doubt that appellant wrongfully used cocaine. *United States v. Ford*, 23 MJ 331 (CMA 1987); *see generally Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The evidence of record shows that appellant was stationed at Naval Weapons Station Earle, Colts Neck, New Jersey, and assigned to duties as a patrolman in the Base Security Department in March of 1991. In April of 1993, he was temporarily relieved of his normal patrolman duties because of his failure to obey a lawful order. In June of 1993, while in his reduced law enforcement status, he notified Special Agent (SA) Burton of the Naval Criminal Investigative Service (NCIS) about alleged drug use by dependent wives on base. Thereafter, appellant accepted an offer from NCIS to join in the investigation of these individuals. He was asked to go undercover and to socialize with the suspects and report back on their activities. He was told that he was not authorized to use drugs and that he was to tell the subjects of the investigation, "No, I'm subject to urinalysis; I can't do it."

A few days before July 29, 1993, SA Burton received a phone call from a person who was not a suspect in the investigation and who was not otherwise identified. SA Burton testified that the caller reported a rumor that appellant was using narcotics with the subjects of the investigation. In order to preserve the integrity of the investigation, SA Burton asked appellant if he would submit to a urinalysis. Appellant agreed, and a urinalysis was scheduled for July 29, 1993. Appellant reported for the test, but it was subsequently canceled by SA Burton. It was rescheduled for August 3, 1993.

On August 3, 1993, SA Burton accompanied appellant to the Naval Air Warfare Center, Lakehurst, New Jersey, where the urinalysis was conducted. The urinalysis was held off-base to avoid focusing suspicion on appellant as an undercover agent. The urinalysis indicated the presence of benzoylecgonine, a metabolite of cocaine, in the amount of 6,612 nanograms per milliliter. The report on the urinalysis stated:

1. Per references (a) and (b), enclosures (1) through (4) are provided.

| Test Method | Dates | Results |
| --- | --- | --- |
| Radioimmunoassay | 10 Aug 93 | Urine contained total Cocaine metabolites equal to or in excess of the DOD cut-off standard of 150 ng/ml. |
| Re–Radioimmunoassay | 12 Aug 93 | Urine contained total Cocaine metabolites equal to or in excess of the DOD cut-off standard of 150 ng/ml. |
| Gas Chromatography-Mass Spectrometry | 13 Aug 93 | GC/MS confirmed the presence of Benzoylecgonine (Cocaine) in the |

| Test Method | Dates | Results |
| --- | --- | --- |
| | | urine equal to or in excess of the DOD cut-off standard of 100 ng/ml. A concentration of 6,612 ng/ml of the Benzoylecgonine metabolite was present. |

After the test results were received, appellant was interviewed by SA Burton and made the following statement:

I am presently assigned to the NWS Earle Security Dept., NWS Earle, Colts Neck, NJ. I have been assigned to NWS Earle since March 91.

Since my arrival on base, I have not been subjected to a urinalysis until Apr 93 when I was relieved of my duties for failure to obey a lawful order. Since that date I have received a urinalysis every month, with the last one occurring on 13 Jul 93. All urinalysis results were negative.

On or about 27 Jul 93, Special Agent Burton approached me with a request for a urinalysis. She explained to me because I was assisting them with a narcotics investigation and because she had received information which implicated me with using narcotics, she would like me to undergo a urinalysis so as not to raise any questions regarding my integrity. Knowing I have not used any type of narcotic, in any way shape or form, I agreed to undergo the urinalysis. I knew I was clean then and I am clean now, so there was no reason for me not to complete a urinalysis. If I was dirty, there is no way I would have agreed to the urinalysis. I know I have a choice to say yes or no, and knowing I had not used any drugs, I consented to the urinalysis.

Initially I was scheduled to take the urinalysis on 29 Jul 93, a Thursday. This was cancelled and rescheduled for Tuesday, 3 Aug 93. I knew a couple of days before the first date that I was going and then I ended up having a week before the date. There is no way I would have done the urinalysis if I had thought it would come back positive. I have not consumed any narcotics and I have no idea why the test results were positive. I am willing to undergo any other examination to show that I have not used any narcotics. I have read over this (2) page statement, typed for me by Special Agent Burton as we discussed its contents. I have corrected and initialed all mistakes I desire, and it is the truth to the best of my knowledge.

At trial, the Government's case consisted of the evidence of appellant's positive urinalysis noted above, as presented by the senior chemist and the certifying scientist at the Navy Drug Screening Laboratory in Norfolk, Virginia. Their testimony included an explanation of the metabolite benzoylecgonine and how it comes to be present in the body. The Government also provided evidence of the chain of custody of the urine sample, as well as testimony from an observer that the sample was from appellant. The Government's chemist estimated that the provider of the urine sample probably consumed 25–50 milligrams of cocaine from 24 to 36 hours prior to providing the sample.

Appellant did not contest the chain of custody or the accuracy of the test results. Instead, he denied knowingly using drugs and proffered an innocent-ingestion defense. Appellant contended that it would be "absurd" to believe that he, a security officer, would knowingly use cocaine the night before a known, scheduled urinalysis. Appellant also took the stand and offered an explanation as to how the cocaine could have gotten into his system unbeknownst to him. He testified that on August 2, 1993, he encountered the subjects of the investigation at a baseball game. He further testified that while talking to the subjects at the game, he drank three or four beers and two shots of brandy. Appellant stated that, at one point, he lost sight of his cup when he placed it on the hood of a car while talking. He suggested that his drink might have been spiked by the subjects of the investigation when he lost

sight of it. Appellant also testified that this was the only time he might have unknowingly consumed cocaine.

Appellant also cross-examined the Government's chemist and presented expert testimony of his own that cocaine dissolves in alcoholic beverages and cannot be tasted thereafter. The Government's chemist conceded that someone who ingested a small amount of cocaine (equal to the least amount possibly taken by appellant) dissolved in an alcoholic beverage might not know they had ingested cocaine. Also, appellant presented testimony that, unbeknownst to him, his co-operation with NCIS was widely rumored throughout the local naval community.

Finally, appellant presented evidence that he had voluntarily provided the urine sample and highlighted the fact that there was no evidence he had tried to dilute the sample with diuretics or otherwise prior to providing it. Appellant also presented evidence of his good character for law-abidingness and truthfulness.

— — —

The granted issue generally questions the legal sufficiency of the evidence supporting appellant's conviction for wrongfully using cocaine in violation of Article 112a. Appellant presents three related arguments why the prosecution's proof is legally insufficient. First, he contends that the prosecution failed to introduce evidence contesting or rebutting the defense evidence of "innocent ingestion." Second, he argues that the prosecution failed to introduce evidence contesting or rebutting evidence of his "common sense" defense. Third, he asserts that, balancing the prosecution's urinalysis evidence against all of the defense evidence "clearly supports a finding that the evidence is legally insufficient."

Our usual inquiry when reviewing cases for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *see United States v. Hart*, 25 MJ 143, 146

(CMA 1987). The limited scope of this inquiry reflects our recognition of "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*, quoting *Jackson v. Virginia, supra.*

■ In *United States v. Harper*, 22 MJ 157 (1986), we held that evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to permit a factfinder to find beyond a reasonable doubt that an accused used marijuana. We also held that a permissive inference of wrongfulness may be drawn by a factfinder from a circumstantial showing of drug use based on such evidence. *Id.* at 161–62; *see United States v. Pabon*, 42 MJ 404, 405–06 (1995). Accordingly, admission of such evidence in appellant's case was sufficient as a matter of law to permit his conviction for wrongful use of cocaine. *Cf. United States v. Murphy*, 23 MJ 310 (CMA 1987).

■ Nevertheless, appellant argues that such evidence of a positive urinalysis is legally insufficient if the defense introduces evidence of "innocent ingestion" and the prosecution fails to introduce evidence rebutting it. In *United States v. Ford*, 23 MJ 331 (1987), we dealt with a similar argument. There, the accused likewise testified that he did not knowingly use marijuana during the period in question and likewise suggested a plausible explanation that his estranged wife had the motive, opportunity, and access to the drug to plant it in his food. The prosecution "called no witnesses to rebut this defense evidence but argued to the members that such evidence was incredible or improbable and that the inference of wrongfulness should still be drawn." *Id.* at 336.

■ In this context, we held that the urinalysis evidence was legally sufficient as long as the defense's evidence of innocent ingestion could be reasonably disbelieved by the factfinders. *Id.* at 334. We said:

[W]hether to draw an inference of wrongfulness is a question to be decided by the factfinder using the standard of reasonable

doubt. It *may* be drawn where no contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this inference should be drawn, a finding of not guilty is required. *Similarly, the inference of wrongfulness may be drawn where contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this contrary evidence should be disbelieved or that the inference should otherwise be drawn, a finding of not guilty is required.*

*Id.* at 335 (emphasis added).

Later on in *Ford,* we made it clear that no further evidence need be presented by the prosecution in the planted-drugs context. We said:

In any event, *evidence which contradicts directly or circumstantially the inference to be drawn does not per se* bar drawing the inference or *require that the prosecution introduce evidence* that *appellant's wife did not secretly plant marijuana in his food.* Instead, the prosecution had to persuade the members beyond a reasonable doubt on credibility and probability grounds that this evidence should be disbelieved and the inference should nonetheless be drawn and given such weight to find knowledge beyond a reasonable doubt. Accordingly, the evidence is not insufficient on this basis.

*Id.* at 336 (emphasis added; footnote and citation omitted). Thus, the existence of evidence raising an innocent-ingestion defense in this case did not compel introduction of additional prosecution evidence rebutting it or cause the prosecution's evidence already admitted to become legally insufficient. *See United States v. Matias,* 25 MJ 356, 361 (CMA 1987).

■ Appellant's next argument why the Government's evidence was legally insufficient focuses on failure of the prosecution to introduce evidence rebutting or contradicting his "common-sense" defense. He basically contends that, since it was established at trial that he was a military police officer who knew the urinalysis was rescheduled for August 3, 1993, it would have been "absurd" for him to knowingly use cocaine during the weekend in question. Absent some evidence contradicting his notice of the test, he argues, a factfinder would be unreasonable to infer that he deliberately used drugs knowing he would be caught. Again, we hold that the prosecution was not required to introduce independent evidence contradicting or rebutting this defense evidence before the members could reasonably draw an inference of wrongfulness. *See United States v. Matias* and *United States v. Ford,* both *supra.*

In this regard, we note appellate government counsel's argument that "[a]ppellant's use can be explained by any number of reasons, including stupidity, poor judgment, or poor timing. Perhaps appellant, in the throes of temptation, momentarily focused only on the present and forgot the future urinalysis." We further note that, during closing argument, trial counsel specifically argued that "drug use and stupidity are not necessarily mutually exclusive. [Appellant] would not be the first stupid person to be convicted if he were to be convicted of drug use."[1] We agree that the evidence of record can be reasonably construed in this manner.

The United States Court of Appeals for the First Circuit in *United States v. Sturm,* 870 F.2d 769 (1989), considered a similar "stupid-criminal" construction of the evidence in assessing legal sufficiency. It said:

Turning to the second premise, Sturm claims that the evidence was insufficient, as a matter of law, to prove that he knew he was not entitled to the $20,000 fee. Defendant's counsel points out that Sturm negotiated the details of this transaction openly, intended to exchange the logbooks at a prearranged time and place, and made

---

1. There is an old Danish saying that if lack of money is the mother of crime, its father may well be lack of intelligence. Even Livy, the Latin law moralist, states: "No crime is founded upon reason." Livy, *History,* Book XXVII, Sec. 28 (circa 10 B.C.).

no effort to conceal his identity. "Sturm was either the stupidest criminal ever arrested by the FBI or a man who honestly thought he was not committing a crime." Brief for the Appellant at 33. This argument is meritless. *When the evidence is considered in the light most favorable to the government, it was certainly sufficient to have supported the jury's finding.* The most damning piece of evidence in this regard is that Sturm himself acknowledged that the transaction he was proposing was similar to kidnapping. The jury could also have concluded from Sturm's insistence on being paid in cash that Sturm knew that he had something to hide. *As regards the defendant's contentions, the jury may have concluded that Sturm was a stupid criminal, or that he had nothing to gain from concealing his identity or the venue for the exchange. In any event, "[t]he choice among various reasonable constructions of the evidence is for the trier of facts." United States v. Klein,* 522 F.2d 296, 302 (1st Cir.1975). Accordingly, we affirm the trial court's refusal to enter a Judgment of Acquittal on this ground.

870 F.2d at 775 (emphasis added); *see also United States v. Bermea,* 30 F.3d 1539, 1551 (5th Cir.1994) (jury free to choose among reasonable constructions of evidence). Accordingly, appellant's second argument is without merit.

■ Turning to appellant's final argument, we note that in reviewing records of courts-martial for legal sufficiency, we do not normally balance the prosecution and defense evidence admitted in a case. *See United States v. McGinty,* 38 MJ 131 (CMA 1993); *United States v. Ford, supra.* We do review the entire evidence of record in a light most favorable to the prosecution to see if a reasonable factfinder could have found all the essential elements of the offense beyond a reasonable doubt. *McGinty,* 38 MJ at 132; *United States v. Turner,* 25 MJ 324 (CMA

1987); *Harper,* 22 MJ at 161. Moreover, when evidence of an element is rationally incomplete, *see Murphy,* 23 MJ at 310, or supported only by inherently inconsistent prosecutorial evidence, *see United States v. Mack,* 33 MJ 251 (CMA 1991), we have found such evidence to be legally insufficient and have set aside the conviction. *Cf. Pabon,* 42 MJ at 404 (government evidence raised only theoretical possibility of conflict with other government proof of guilt).

We are not unmindful of the dangers faced by undercover agents, and we are aware of the possibility that an agent might be "set up" by the targets of an investigation.[2] However, appellant presented defense evidence at his court-martial for the purpose of rebutting the Government's circumstantial case that he wrongfully used drugs. He contended that this evidence demonstrated the possibility that he was the victim of a set-up by the targets of his undercover investigation. This defense evidence, along with the prosecution's case based on urinalysis testing, was fully considered by the members in determining appellant's guilt. Nevertheless, the members who saw and heard the witnesses (*see* Art. 66(c), UCMJ, 10 USC § 866(c) (1994)), found him guilty. Moreover, the Court of Criminal Appeals, which also has factfinding power, affirmed the findings of guilty. *See United States v. Grostefon,* 12 MJ 431, 435 (CMA 1982) ("Court of Military Review [now the Court of Criminal Appeals] has the mandatory responsibility to read the entire record and independently arrive at a decision that the findings ... are correct in law and fact.").

■ This Court will not use the rubric of legal sufficiency to usurp the powers of these factfinders and enter our own view of guilt in this case. *See United States v. White,* 45 MJ 345, 348 (1996) (United States Court of Appeals for the Armed Forces does not determine guilt or innocence). Instead, adhering

---

**2.** We note that appellant did not claim he ingested the cocaine "pursuant to legitimate law enforcement activities" because of a fear that either his life or the investigation was in danger of being compromised. *See* para. 37(c)(5), Part IV, Manual for Courts–Martial, United States, 1984.

to our proper role under Article 67(c), UCMJ, 10 USC § 867(c) (1994), we conclude, based on all the evidence of record, that a rational factfinder could have found appellant guilty beyond a reasonable doubt of wrongfully using cocaine. *See Jackson v. Virginia, supra.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

GIERKE, Judge (dissenting):

This case involves an undercover policeman who volunteered to infiltrate a drug ring. Unfortunately, his undercover work became known within the local community. He readily submitted to urinalysis testing. He had advance notice of the urinalysis. He had the ability to delay the urinalysis but did not. He tested positive for cocaine. At his court-martial he denied *knowingly* using drugs and suggested that those whom he had been investigating may have set him up.

The sole evidence of *knowing* use was a permissive inference of knowledge based on the positive urinalysis. The majority finds this evidence legally sufficient to establish guilt beyond a reasonable doubt. In my view appellant's conviction based on the permissive inference of knowledge, under the facts of this case, offends due process. It places every undercover drug investigator at the mercy of the drug users. Accordingly, I dissent.

As the majority recognizes, evidence supporting a conviction is legally sufficient if a reasonable factfinder could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 MJ 324 (CMA 1987). When evaluating the evidence under this standard, we "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Blocker,* 32 MJ 281, 284 (CMA 1991). In my view a reasonable factfinder

could not find knowing use based on the evidence of record because knowing use is not a "reasonable inference" from that evidence.

In *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224–25, 60 L.Ed.2d 777 (1979), decided less than a month before *Jackson v. Virginia, supra,* the Supreme Court held that the validity of permissive inferences is reviewed "as applied" to a particular appellant under the specific facts of his or her case. There must be a rational connection between the fact proved and the fact inferred. An inference is "irrational" or "arbitrary" and thus violates due process "unless it can at least be said with substantial assurance" that the inferred fact is "more likely than not to flow from the proved fact on which it is made to depend." *Barnes v. United States,* 412 U.S. 837, 842, 93 S.Ct. 2357, 2361, 37 L.Ed.2d 380 (1973), quoting *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969). If the permissive inference is the only proof of guilt, then it must meet a higher standard than "more likely than not"; it must flow from the proved fact beyond a reasonable doubt. *See Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *see also* E. Imwinkelried, P. Giannelli, F. Gilligan, and F. Lederer, *Courtroom Criminal Evidence* § 2920 at 975 (2d ed. 1993) ("The foundational fact must prove the inferred fact's existence beyond a reasonable doubt only if the inference is the only possible basis for a guilty finding in the case.").

The rational basis for the inference of knowing use of drugs was first articulated by this Court in *United States v. Ford,* 23 MJ 331, 337 (1987). In *Ford* this Court justified the inference because of three circumstances: (1) drugs are contraband for all servicemembers, thus reducing access to drugs as well as innocent ingestion; (2) servicemembers are on notice "to avoid any and all contact with these substances, a fact which further reduces the possibility of innocent ingestion"; and (3) the physiological effects of drugs are

commonly known, so that a servicemember "generally knows what he consumes."

None of these circumstances justifying the inference is present in this case. In the first place, appellant's access to drugs was not reduced by the military environment. His military duties as an undercover policeman increased it. Secondly, he was not on notice to avoid "any and all contact" with drugs. His law enforcement duties required close contact with drugs and drug users. Finally, the Government's own expert testified that the low level of cocaine metabolites in appellant's urine was consistent with unknowing use.

Based on the foregoing, I find no rational basis for the permissive inference of knowing use in this case. Under the specific facts of this case, the permissive inference of knowledge does not even pass the "more likely than not" test. It falls far short of proving knowledge beyond a reasonable doubt. The only evidence on the issue of appellant's knowledge is his own sworn denial of knowing use and the testimony of the government expert that the low metabolite level was consistent with unknowing use. In my view the prosecution failed to meet its constitutional burden of proving guilt beyond a reasonable doubt. I would set aside the conviction and dismiss the charge.